1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| **Maria Rosario Francisco,** *et al.***,** ) | |
| ) | |
| **Plaintiffs,** ) | **3:14-cv-8111 JWS** |
| ) | |
| **vs.** ) | **ORDER AND OPINION** |
| ) | |
| **State Farm Mutual Automobile** ) | **[Re: Motion at Docket 28]** |
| **Insurance Company,** *et al.***,** ) | |
| ) | |
| **Defendants.** ) | |

## I.  MOTION PRESENTED

At docket 28 defendant State Farm Mutual Automobile Insurance Company ("State Farm") moves for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on plaintiffs Maria Rosario Francisco and Catarino Celestino Francisco's ("plaintiffs'") bad faith and punitive damages claims.  State Farm's motion also requests an order establishing that it is not bound by the default judgment entered by the Navajo County Superior Court in plaintiffs' underlying liability action.  Plaintiffs oppose State Farm's motion at docket 36; State Farm replies at docket 43.  Oral argument was heard on July 28, 2015.

## II.  BACKGROUND

Plaintiffs were injured in a motor vehicle accident in 2008 when their car collided with a car owned by Terry Pike ("Pike") that was being driven by Marlan Oliver ("Oliver"),

third parties not before the court.[1]  According to plaintiffs, Oliver caused the accident by running a red light.[2]  The vehicle Oliver was driving was covered by an insurance policy issued by Geico Insurance ("Geico") with liability coverage limits of $15,000 per person and $30,000 per occurrence.[3]  Plaintiffs were insured by State Farm under a policy that contained underinsured motorist (UIM) coverage (with a limit of $50,000 per person and $100,000 per occurrence) and medical payments coverage (with a limit of $5,000 per person).[4]  In 2010 plaintiffs sued Pike and Oliver in Navajo County Superior Court: *Francisco, et al. v. Oliver, et al*.[5]

On July 27, 2011, plaintiffs' counsel Eduardo H. Coronado ("Coronado") wrote State Farm a letter in which he stated that "[c]laims have been made now against the party whom we believe caused the harm," but did not mention that plaintiffs had filed a lawsuit against Pike and Oliver, the court in which that lawsuit was filed, the identities of the defendants, or that they had served defendants with process in June 2011.[6]  Coronado's July 27 letter states that plaintiffs believed that "the responsible party" lacked sufficient liability insurance to cover plaintiffs' injuries and that plaintiffs intended to pursue a UIM claim with State Farm if that turned out to be the case.  State Farm

---

[1]Doc. 29-1 at 45.

[2]Doc. 36-1 at 22.

[3]Doc. 29 at 2 ¶ 3; Doc. 36 at 2.

[4]Doc. 29-1 at 3.

[5]No. S-0900-CV-201000727 (complaint filed Dec. 3, 2010, docket available at: http://www.azcourts.gov).

[6]Doc. 29-2 at 2.  State Farm disputes whether process was actually effectuated.

responded to Coronado's letter on August 8, informing him it appeared that the adverse

policy had "accepted liability for the claim and paid for the damages to [plaintiffs']

vehicle," but plaintiffs' bodily injury claims had not yet settled.[7]   The record is unclear

regarding the basis of State Farm's understanding as to these facts.   State Farm

informed Coronado that it would hold the UIM coverage open and, should such

coverage be needed, plaintiffs would have to send in vehicle damage photos.[8]   State

Farm's claim notes from August 8 include the following entries: "Atty letter says he

believe OIC has sufficient covg, but wanted to satisfy the laws regarding reporting the

UIM, just in case;" "Close file, it does not appear there will be any handling"; and

"Potential UIM claim If OIC does not have sufficient covg."[9]

Coronado wrote State Farm again on August 11 stating that plaintiffs were

notifying State Farm pursuant to A.R.S. § 12-555 that they intended to pursue a UIM

claim.[10]   Coronado again failed to mention any details regarding the then-pending

lawsuit against Pike and Oliver.   State Farm's claim notes from that date contain the

following entries: "Rev'd atty letter, it says he is notifying us in accordance w/the ARS

statute, Called and LM to explain why our letter says what it does"; "Sec'y will have him

call us"; and "Re-Closing file."[11]

---

[7]Doc. 29-2 at 4.

[8]*Id*.

[9]Doc. 66-1 at 26-27.

[10]Doc. 29-2 at 6.

[11]Doc. 66-1 at 25.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Pike and Oliver did not answer plaintiffs' complaint and were defaulted.[12]  On June 18, 2012, after reviewing plaintiffs' testimony and exhibits, the superior court issued findings of fact regarding plaintiffs' damages.[13]  Judge Michala M. Ruechel found that plaintiff Maria Francisco's injuries "included opening stitches from a prior medical procedure and injuries to her shoulder and arm," that Ms. Francisco had not regained use of her arm after the accident, and that her disability was likely permanent.[14] Further, Ms. Francisco could no longer continue her previous work making and selling tamales by hand "at the same level," which would reduce her income by $423,800 over the remainder of her working life.[15]  Judge Ruechel also found that plaintiff Catarino Francisco had suffered an injury to his left leg that would require surgery and rehabilitation.  The court awarded Ms. Francisco damages of $550,000 "for loss of income, loss of use of her harm, medical bills and pain and suffering," and Mr. Francisco $250,000 for "past and future medical expenses and pain and suffering."[16]  This award was reduced to judgment on September 24, 2012.[17]

Four days later Coronado wrote State Farm stating that plaintiffs had obtained a $800,000 judgment, that the "party at fault does not have enough coverage to cover the award," and that plaintiffs were thereby "putting forth their claim against the uninsured

[12]Doc. 36-1 at 10.

[13]*Id.*

[14]*Id.* at 11.

[15]*Id.*

[16]*Id.*

[17]Doc. 36-1 at 12-15.

or underinsured motorist portion of their insurance policy."[18]  Coronado faxed various documents to State Farm, including a copy of the judgment.[19]

In January 2013 Geico offered to pay Pike's liability policy limit of $30,000 to plaintiffs as full satisfaction of the judgment against Pike and Oliver.[20]  Coronado then relayed this offer to State Farm, explaining that it was insufficient to cover plaintiffs' damages and demanding that State Farm pay plaintiffs UIM and medical payments policy limits by February 6.[21]  State Farm's lawyer, James E. Ledbetter ("Ledbetter"), responded on February 7, stating that "the apparent default judgment against the third-parties does not provide sufficient documentation" to pay the UIM claims and, based on the information that Ledbetter had reviewed, Geico's payment was sufficient to cover plaintiffs' damages.[22]  Ledbetter asked plaintiffs to submit further documentation of their injuries, which they apparently provided over the following months.[23]

In September 2013 State Farm denied plaintiffs' UIM claim.[24]  State Farm stated that it was not bound by the default judgment, in part because it did not receive notice of the proceedings until September 2012 and therefore had "no opportunity to

---

[18]*Id.* at 18.

[19]*Id.* at 17.

[20]Doc. 29-2 at 16-17.

[21]*Id.* at 23-25, 27.

[22]*Id.* at 29-30.

[23]*Id.* at 32-34.

[24]*Id.* at 44-46.

1
2
3
4

participate."[25]  Further, State Farm asserted that "based on the extremely limited information that [had] been provided and obtained independently at State Farm's own expense," plaintiffs' medical damages were "only a few thousand dollars each."[26]

5
6
7
8
9

Plaintiffs then filed the present action against State Farm.[27]  Plaintiffs' Second Amended Complaint ("Complaint") includes three claims: claim one for breach of contract; claim two for bad faith; and claim three for "bad faith-against the insurance company."[28]  Plaintiffs seek punitive damages under their third claim only.

### III.  STANDARD OF REVIEW

10
11
12
13
14
15
16
17
18
19
20

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[29]  The materiality requirement ensures that "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[30]  Ultimately, "summary judgment will not lie if the . . . evidence is such that a reasonable jury could return a verdict for the nonmoving party."[31]  However, summary judgment is appropriate "against a party who fails to make a showing sufficient to

21
22
23
24
25
26
27
28

[25]*Id.* at 45.

[26]*Id.*

[27]Doc. 1-1 at 2-5.

[28]*Id.* at 7-13.

[29]Fed. R. Civ. P. 56(a).

[30]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[31]*Id.*

-6-

establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[32]

The moving party has the burden of showing that there is no genuine dispute as to any material fact.[33]  Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, the moving party need not present evidence to show that summary judgment is warranted; it need only point out the lack of any genuine dispute as to material fact.[34]  Once the moving party has met this burden, the nonmoving party must set forth evidence of specific facts showing the existence of a genuine issue for trial.[35]  All evidence presented by the non-movant must be believed for purposes of summary judgment and all justifiable inferences must be drawn in favor of the non-movant.[36]  However, the non-moving party may not rest upon mere allegations or denials, but must show that there is sufficient evidence supporting the claimed factual dispute to require a fact-finder to resolve the parties' differing versions of the truth at trial.[37]

---

[32]*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[33]*Id.* at 323.

[34]*Id.* at 323-25.

[35]*Anderson,* 477 U.S. at 248-49.

[36]*Id.* at 255.

[37]*Id.* at 248-49.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# IV.  DISCUSSION

## A.    Plaintiffs' Bad Faith Claims

Every insurance contract includes an implied covenant of good faith and fair

dealing whereby each party is bound to "refrain from any action which would impair the

benefits which the other had the right to expect from the contract or the contractual

relationship."[38]  Two of plaintiffs' causes of action allege that State Farm acted in bad

faith by denying their UIM claim unreasonably.[39]  Thus, plaintiffs bear the burden of

establishing the following two elements: (1) that State Farm lacked a reasonable basis

for denying their UIM claim (an objective test); and (2) that State Farm "knew or was

conscious of the fact that it was acting unreasonably" in denying their claim (a

subjective test).[40]  State Farm argues that plaintiffs lack evidence of either of these

elements.  Plaintiffs do not respond to this argument directly, but they do imply that

State Farm lacked an objectively reasonable basis for denying their claim because

Judge Ruechel determined that their damages exceed the UIM policy limit.  Plaintiffs'

argument fails, however, because they do not present any facts that would tend to show

the existence of the subjective component of the bad faith test.  Because such a

showing is essential to plaintiffs' case and is one on which they would bear the burden

---

[38]*Rawlings v. Apodaca*, 726 P.2d 565, 570 (Ariz. 1986).

[39]Doc. 1-1 at 10 ¶¶ 28, 30.  Plaintiffs' second bad faith claim also includes allegations that appear not to relate to this case, including allegations that State Farm refused to defend plaintiffs, refused to "investigate sites," and repudiated its insurance policies.  *Id*. at 11 ¶ 34. Plaintiffs do not challenge State Farm's contention that these allegations have no bearing to the facts of this case and were included in the complaint by mistake.  Doc. 28 at 12-13.

[40]*Lennar Corp. v. Transamerica Ins. Co.*, 256 P.3d 635, 642 (Ariz. Ct. App. 2011).

of proof at trial, summary judgment is mandated under Rule 56(c) on plaintiffs' two bad

faith claims.[41]  This includes plaintiffs' claim for punitive damages.

## B.    Whether State Farm is Bound by the Default Judgment

State Farm argues that it is not bound by the *Francisco v. Oliver* default

judgment for two reasons.  First, the UIM policy contains various provisions to that

effect; and second, even if such provisions did not exist, State Farm cannot be bound

by the default judgment because State Farm lacked notice of that action and an

opportunity to participate.  State Farm's UIM coverage provision provides in pertinent

part:

**Deciding Fault and Amount**

1. a.   The *insured* and we must agree to the answers to the following two
        questions:

     (1)   Is the *insured* legally entitled to collect damages from the
        owner or driver of the . . . *underinsured motor vehicle*?

     (2)   If the answer to 1.a.(1) above is yes, then what is the
        amount of the damages that the *insured* is legally entitled to
        recover from the owner or driver of the . . . *underinsured
        motor vehicle*?

   b.   If there is no agreement on the answer to either question in 1.a.
        above, then the *insured* shall:

     (1)   within three years after providing us written notice of the . . .
        underinsured motor vehicle claim file a lawsuit against us in
        a state or federal court that has jurisdiction;

     (2)   consent to a jury trial if requested by us;

     (3)   agree that we may contest the issues of liability and the
        amount of damages; and

---

[41]*See Celotex Corp.*, 477 U.S. at 322.

(4)    secure a judgment in that action.  The judgment must be the final result of an actual trial and any appeals, if any appeals are taken.

2.  We are not bound by any:

a.    judgment obtained without our written consent; and

b.    default judgment against any *person* or organization other than us.[42]

Plaintiffs respond by arguing that, under *Sandoval v. Chenoweth*,[43] because State Farm could have filed a motion to set aside the default judgment, it is irrelevant whether the policy language precludes State Farm from being bound by a default judgment or whether State Farm lacked notice of the lawsuit while it was pending.  In *Sandoval*, the defendant tortfeasor failed to notify his liability carrier that he had been sued, in violation of the terms of his policy, and he was defaulted.  The carrier argued that the defendant's policy violation prevented it from being bound by the default judgment.  The Arizona Supreme Court disagreed, holding that former A.R.S. § 28-1170 applied and precluded the carrier's "policy defense" because under that statute "no violation of [a] policy shall defeat or void the policy."[44]  Further, the court held that the carrier could not "relitigate the facts of the original suit in the subsequent garnishment action" because a garnishment action is "merely an ancillary proceeding to subject the indebtedness to satisfaction of a judgment."[45]  Because the carrier could

[42]Doc. 29-1 at 6.

[43]428 P.2d 98 (Ariz. 1967).

[44]*Id.* at 101 (quoting former A.R.S. § 28-1170 (1967), currently codified at A.R.S. § 28-4009(C)(5)(a)).

[45]*Id.* at 102.

-10-

(and did) file a motion to set aside the default judgment pursuant to Rule 60(c) of the

Arizona Rules of Civil Procedure, the carrier's due process rights were not violated.[46]

*Sandoval* can be differentiated from this case for at least two reasons.  First,

because State Farm is not attempting to defeat or void plaintiffs' policy, but rather to

avoid being bound by the default judgment, State Farm's policy defense is not

precluded by statue.  And second, even if State Farm could have intervened in the state

court proceeding to set aside the default,[47] it was not required to do so by *Sandoval*.  In

*Sandoval*, the insurer was contractually bound by the default judgment's determination

of damages,[48] which is why it was bound by that judgment in the absence of Rule 60(c)

relief.  The insurance contract here states the opposite: that State Farm is not bound by

the default judgment.  Thus, if the policy's terms are given effect, State Farm does not

need Rule 60(c) relief.

It is unclear whether the policy terms upon which State Farm relies are void as a

matter of public policy, however.  Although Arizona law is silent, in a majority of

jurisdictions "an insurer will be bound by the 'findings, conclusions and judgment'

entered in the action against the tortfeasor when it has notice and an opportunity to

intervene in the underlying action against the tortfeasor," even if the policy language

---

[46]*Id.* at 102 (citation omitted).

[47]*See Liston v. Butler*, 421 P.2d 542, 548 (Ariz. Ct. App. 1966) ("[O]ne whose interests are directly affected by a judgment in a proceeding to which he is not a party, may timely move to set aside such judgment, and the trial court after notice and hearing may set aside said judgment and grant a motion to intervene.").

[48]*Sandoval*, 428 P.2d 102 ("[The rendition of judgment against the insured . . . create[d] a debt under the insurance contract between the judgment debtor and his insurer.").

states otherwise.[49]  There is no need for the court to decide whether Arizona law would

adopt this approach, however, because plaintiffs did not provide State Farm with

sufficient notice of their lawsuit against Pike and Oliver.

Even in jurisdictions that follow the majority approach, an insurer will not be

bound by a default judgment where it lacked "a reasonable opportunity to appear in,

and thus to protect its interests in, the proceedings that led up to the judgment or

award."[50]  In *Beck v. Farmers*, for example, the insureds presented evidence showing

that the insurer knew the severity of the accident, that the insureds' claims would likely

exceed the tortfeasor's liability coverage limits, and that the insureds were represented

by counsel that "was aggressively pursuing all available benefits."[51]  The Court of

Appeals of Washington held that this was insufficient to put the insurer on notice of the

lawsuit because the insureds failed to inform the insurer "that [the tortfeasor] had been

sued, of where the suit was filed, of who the parties were, of what the claims were, or of

how [the insurer] could make an appearance."[52]

The information that plaintiffs relayed to State Farm about their underlying

lawsuit is even more vague than the information provided to the insurer in *Beck*.  The

---

[49]*Fisher v. Allstate Ins. Co.*, 961 P.2d 350, 353 (Wash. 1998) (quoting *Finney v. Farmers Ins. Co.*, 586 P.2d 519, 530 (Wash. Ct. App. 1978)).  *But see Peterman v. State Farm Mut. Auto. Ins. Co.*, 948 P.2d 63 (Colo. Ct. App. 1997); *Mazziotti v. Allstate Ins. Co.*, 695 A.2d 1010 (Conn. 1997); *Allstate Ins. Co. v. Hunt*, 450 S.W.2d 668 (Tex. App. 1970).

[50]*Beck v. Farmers Ins. Co. of Wa.*, 53 P.3d 74, 77 (Wash. Ct. App. 2002).

[51]*Id.* at 76.

[52]*Id.* at 78.  *See also id.* (holding that insureds' letter was insufficient because "it did not state any of the information that a party would need to assess whether an appearance was necessary to protect its interests and, if so, how such an appearance could be made.").

obvious facts missing from plaintiffs' letters to State Farm include: that a lawsuit had been filed; the case number; the venue; the parties; whether Pike and Oliver had been served; and the claims alleged in the complaint.  Plaintiffs did not even notify State Farm that there was a lawsuit pending, let alone gave it sufficient information to assess whether it needed to make an appearance to protect its interests.  Perhaps plaintiffs were deliberately vague in hopes that they could secure an uncontested default judgment.  In any event, because plaintiffs failed to give State Farm adequate information, the default judgment is not binding on State Farm.

## V.  CONCLUSION

Based on the preceding discussion, State Farm's motion for partial summary judgment at docket 28 is **GRANTED** as follows: (1) Plaintiffs first and second claims and request for punitive damages are dismissed, and (2) State Farm is not bound by the default judgment.

DATED this 29th day of July 2015.


/s/ JOHN W. SEDWICK
SENIOR UNITED STATES DISTRICT JUDGE